IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**JODY F. WANGSGARD,**                              CV. 11-6012 RE

                Plaintiff,                        **OPINION AND ORDER**

      v.

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

                Defendant.


**REDDEN**, Judge:

Plaintiff Jody F. Wangsgard ("Wangsgard"), brings this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the decision of the Commissioner is affirmed and this matter is dismissed.

///

1 - OPINION AND ORDER

## BACKGROUND

Born in 1956, Wangsgard has a high school education and completed a medical assistance certification program. She has worked as a medical assistant. In June 2007, Wangsgard filed applications for disability insurance benefits alleging disability since June 28, 2006, due to a back injury. Her application was denied initially and upon reconsideration. On October 20, 2009, a hearing was held before Administrative Law Judge ("ALJ") Madden. In a decision dated November 24, 2009, the ALJ found Wangsgard not disabled. Wangsgard's request for review was denied, making the ALJ's decision the final decision of the Commissioner. Wangsgard now seeks judicial review of the Commissioner's decision.

## ALJ's DECISION

The ALJ found Wangsgard had the medically determinable severe impairment of degenerative disc disease of the lumbar spine.

The ALJ determined that Wangsgard retained the residual functional capacity to perform light work, with occasional climbing, stooping and crouching, and no concentrated exposure to vibration and hazards. Tr. 15.

The ALJ determined that Wangsgard was able to perform her past relevant work as a medical assistant. In the alternative, the ALJ found that there were significant numbers of jobs that plaintiff could perform, citing those identified by the vocational expert, including mail clerk, office helper, and rental clerk.

The medical records accurately set out Wangsgard's medical history as it relates to her claim for benefits. The court has carefully reviewed the extensive medical record, and the parties

are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## DISCUSSION

Wangsgard contends that the ALJ erred by: (1) finding her not fully credible; (2) improperly rejecting physician opinions; and (3) improperly rejecting lay testimony.

### I. Credibility

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a); 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007)(citing *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995)(citing *Bunnell v. Sullivan,* 947. F.2d 341, 345-46 (9th Cir. 1991)(*en banc)).*

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen,* 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony

3 - OPINION AND ORDER

"is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2005).

Wangsgard testified that she cannot lift ten pounds without triggering painful spasms in her back. Tr. 38. She testified that she spends three-quarters of her day lying down. Tr. 34. She stated that when she washes dishes she sits or lies down while the sink fills with water. Tr. 36-37. Wangsgard reported to treatment providers that she could only sit without pain for: "5-60 minutes" (July 2006): "pain with sitting too long" (July 2006); "some pain with standing and sitting" (August 2006); "can sit approximately 2 hours" (December 2006); "unable to walk without a cane" (April 2007); "[h]er sitting tolerance is about an hour" (May 2007); "can only sit between 30-60 minutes" (November 2007); "agg[ravated] with prolong[ed] sit/driving x 10-15 min[utes]"( May 2008) ; "can sit for 30 to 45 minutes" (March 2009) "can sit between 30-60 minutes" (September 2010). Tr. 187, 212, 355, 421, 266, 253, 342, 433, 322, 487.

The ALJ noted that Wangsgard testified that she does not take any prescription pain medication, choosing over the counter medication like Tylenol and medical marijuana. Tr. 34-36. The ALJ noted that Pervez Iranpur, M.D., a chronic pain specialist, prescribed Kadian in July 2009. Wangsgard did not take the medication because she did not want to use narcotics. Tr. 16.

The ALJ cited Wangsgard's disinterest in a variety of treatment options suggested by Shishir Dhruva, M.D., including a spinal cord stimulator, transforaminal epidural injections, long acting pain medication, and commitment to a healthier lifestyle, including exercise, weight loss, and smoking cessation. *Id.*, Tr. 321-24.

The ALJ properly noted that two physicians recorded evidence of symptom exaggeration and/or malingering. Tr. 17-18. Gary Alegre, M.D. examined Wangsgard on October 4, 2006, and found "a component of symptom magnification" in her presentation. Tr. 17, 409. Dr. Alegre released Wangsgard for full duty work on November 20, 2006, despite her claim that she could not work. Dr. Alegre told Wangsgard that he did "not see anything disabling on her studies," noting the "MRI shows an insignificant minimal disc bulge at L4-5." Tr. 409.

The ALJ cited the records of Derrick Sorweide, D.O., who performed a comprehensive orthopedic examination of Wangsgard on August 16, 2007. Tr. 18, 266-70. Wangsgard reported that she had moved to Oregon "since she could not get disability in California." Tr. 267. Dr. Sorweide found plaintiff had 100 per cent range of motion in her cervical and lumbar spine in all planes. Tr. 269. Straight leg raises were negative in the seated and supine positions, and Wangsgard was able to touch her toes while standing with straight legs. *Id.* Dr. Sorweide concluded that plaintiff's use of a cane was "an act," there was no evidence of physical disability, and there were signs of malingering. Tr. 269-70. Dr. Sorweide opined that Wangsgard had no physical limitations. Tr. 270.

The ALJ concluded that Wangsgard was not fully credible as to the intensity, persistence and limiting effects of her symptoms.

Wangsgard correctly notes that she does not have to take medication or engage in treatment which may be less tolerable than the symptoms. Setting aside those reasons, the ALJ correctly identified clear and convincing reasons to find plaintiff less than fully credible.

Plaintiff argues that the ALJ did not make an affirmative finding that she was malingering. The ALJ is not required to use magic words and say that she finds malingering so

5 - OPINION AND ORDER

long as she points to the evidence that medical providers have found malingering or symptom magnification. Counsel cites *Wick v. Barnhart*, 2006 WL 58749 (9th Cir. OR) 2006. However that citation is to a semi-conductor patent.

The ALJ's credibility determination is supported by clear and convincing reasons and based on substantial evidence.

## II. Physician Opinions

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). When making that determination, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must also generally give greater weight to the opinion of an examining physician than to that of a reviewing physician. *Id.* If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### F. Karl Gregorius, M.D.

Dr. Gregorius treated Wangsgard from December 2006 to July 2009. Plaintiff argues that he was her treating physician, though in his reports to Tristar Insurance, Dr. Gregorius states that "[t]he question is whether or not she can return to work." Tr. 421. The Commissioner argues that Dr. Gregorius is not entitled to the deference normally due a treating physician because he had no greater opportunity to know and observe Wangsgard than any other physician.

In December 2006 Dr. Gregorius noted that Wangsgard was not a candidate for surgery, and recommended that she return to work on a modified basis including no lifting more than five pounds, no bending or stooping, and no sitting more than an hour without a fifteen minute break. Tr. 422. He opined that those restrictions would likely be permanent. Id.

In February 2007 Dr. Gregorius referred Wangsgard to physical therapy. Tr. 420. On March 1, 2007, Dr. Gregorius recorded an exacerbation of mechanical lumbar spine pain, and opined that Wangsgard could return to work on March 2, 2007, with no lifting more than 10 pounds, and no bending or stooping. Tr. 255.

On April 12, 2007, Dr. Gregorius reported to the insurance company that Wangsgard had less pain since she stopped working, and would benefit from physical therapy. Tr. 266. On May 24, 2007, Dr. Gregorius informed the insurance company that the patient was stable and merited a permanent partial disability of 8% under the American Medical Association guidelines. Tr. 256. He recommended that she return to work not involving bending, stooping, or lifting. *Id.*

In October 2007 Dr. Gregorius wrote the insurance company that Wangsgard continued to be stable. Tr. 292. In April 2008 Dr. Gregorius reported to the insurance company that Wangsgard's examination was unchanged. Tr. 445.

In July 2009, Dr. Gregorius completed a form designed by plaintiff's counsel, in which he checked boxes indicating that Wangsgard was unable to perform either light or sedentary work as defined by Social Security regulations. Tr. 349-51.

The ALJ noted Dr. Gregorius's July 2009 opinion, stating that "this is an extreme position, especially in light of the objective medical evidence of record that does not support such limitations." Tr. 18. The ALJ properly noted that the doctor offered no explanation, his

statements were conclusory, and the opinion was inconsistent with the doctor's own clinical records and an MRI and evaluation performed by Glenn O'Sullivan, M.D. Tr. 17-18.

Assuming that Dr. Gregorius was a treating physician for Wangsgard, the ALJ properly offered specific and legitimate reasons for discounting his disability conclusion.

### Donald Pang, M.D.

Dr. Pang examined Wangsgard and reviewed her medical records on November 20, 2007. Tr. 338-46. He diagnosed lumbar spine radiculopathy, and assessed a 9% impairment under the AMA guidelines. Tr. 344. Dr. Pang opined that plaintiff was stable, and could not perform work that included heavy lifting, repetitive bending or stooping. Tr. 346. He recommended further conservative treatment.

The ALJ found that Dr. Pang's assessment supported his finding that the functional limitations arising from Wangsgard's impairment were not as severe as alleged. Tr. 18.

### Linda L. Jensen, M.D.

Dr. Jensen reviewed Wangsgard's medical records and completed a physical residual functional capacity assessment. Tr. 297-304. She found that Wangsgard could perform light work, sit for six hours, and could stand and walk for six hours in a workday. Dr. Jensen thought that Wangsgard could occasionally climb ladders, ropes, and scaffolds, stoop, and crouch. Tr. 299.

The ALJ gave Dr. Jensen's opinion great weight.

### Derrick J. Sorweide, D.O.

Dr. Sorweide performed a orthopedic examination of Wangsgard on August 16, 2007. Tr. 267-70. Dr. Sorweide observed that plaintiff sat, stood, and walked without difficulty and

that she used a cane. Tr. 269. He found a full range of motion in plaintiff's cervical and lumbar spine, in all planes. Tr. 269. He concluded that she had no functional limitations, that there were signs of malingering, and that the use of the cane was unnecessary. Tr. 270.

The ALJ gave Dr. Sorweide's opinion great weight, stating that it was based on objective evidence and well-explained. Tr. 18.

Drs. Gregorius and Pang opined that Wangsgard should avoid bending and stooping. The ALJ erred by failing to address these limitations. However, this error was harmless because both the office helper and rental clerk positions relied upon by the ALJ require no stooping or bending. *See,* 1991 WL 672232; 1991 WL 672594.

An ALJ's error is harmless when his decision would remain legally valid despite the error. *Carmickle v. Comm'r. Soc. Sec. Admin.,* 533 F.3d 1155, 1162 (9th Cir. 2008). Even if the ALJ had found Wangsgard should avoid bending and stooping he identified jobs she could perform.

### III. Lay Witness Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 416.913(d), 416.945(a)(3); *Bruce v. Astrue,* 557 F.3d 1113, 1115 (9th Cir. 2008). Friends and family members who observe the claimant's symptoms and daily activities are competent to testify about the claimant's condition. *Dodrill v. Shalala,* 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater,* 100 F.3d 1462, 1467 (99th Cir. 1996).

Wangsgard's son, Todd Wangsgard, submitted a Third Party Function Report. Tr. 126-33. He stated that his mother rests between household chores, and has trouble stooping or bending. Tr. 127. She uses a cane. Tr. 132.

The ALJ noted Mr. Wangsgard's report, but found it inadequate to alter the residual functional capacity assessment because it was not fully consistent with the medical and other evidence. Tr. 17. The ALJ's inference is that Mr. Wangsgard's testimony is not fully reliable because it is based upon reports of a claimant properly found not credible. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009). The ALJ properly rejected the lay testimony.

## CONCLUSION

For these reasons, the ALJ's decision that Wangsgard was not disabled is based on correct legal standards and supported by substantial evidence. The decision of the Commissioner is affirmed and this case is dismissed.

IT IS SO ORDERED.

Dated this 30th day of January, 2012.

_____
JAMES A. REDDEN
United States District Judge